Good morning. Amy Cleary on behalf of Robert Kimmell. I'd like to reserve four minutes for my rebuttal. I'll keep track of my time. I'd like to focus this morning on the issues that require this court to vacate Mr. Kimmell's convictions and remand for retrial in this case. And the very specific issues I'd like to focus on are the district court's handling of the confidential informant, the Franks issue, and I'm hoping the jury issue with regard to the seating of the alternate jurors. The disclosure of the confidential informant in this case, this court is well aware of Roviero. The month before trial, when defense counsel requested that the confidential informant be disclosed, the parties briefed the issue. The district court gave very short shrift to the defense counsel's request for it. And we can tell by the district court's handling of that defense request that the district court did not consider this court's decision in Spires, which says as long as the defense makes a minimal threshold showing that there is at least a requisite showing that it could be helpful to a possible defense, then the district court must, and that's what Spires says, must have a in-camera hearing to determine if it was going to be helpful to a defense. Can I ask you just to give me the explanation for why, in light of what your client's defense was going to be, why knowing the identity of the tipster would have helped? What's the — how does it increase the likelihood that his defense would succeed if he knew that piece of information? Absolutely. So the storage said in this case forms the basis of counts 5 through 8. The confidential informant in this case gave information to Detective Plank on May 30th. That storage said was not searched until June 3rd. Now, this court has used, in cases like this, the information given at trial to go back and look at the evidence to see, you know, did the district court handle it correctly? So this court can now look at the trial evidence to see what we now know. Right. Okay. I think that's fair. Okay. And so your client's defense was that it was either, I think — help me with the names — Kelly or Amanda was the person — So it could have been Amanda McCalvin. I'm sorry. Amanda McNevin. Okay. Or Kelly Bryant. Yeah. So Amanda and Kelly. Just help me keep it simple with the first names, maybe. Okay. I know that's — but so that's his defense, is that it wasn't my step. It was either of them, and they both had access. Correct. Right? Okay. So let's say that the tipster was one of the two of them. Correct. If he had known that, how does that help his defense at trial? Sure. So if it was either of those two women, those women could have, A, put the drugs, more drugs into the storage facility, which would have impacted counts 7 and 8, because count 7 required that the jury find that he had more than 50 grams of methamphetamine, which increased the sentencing exposure. It also required the count 8 mandatory minimum sentencing, which carried these 60 months consecutive to the rest of the sentencing. So it impacts counts 7 and 8. Okay. Why does the disclosure of the confidential informant assist? I mean, that was the defense anyway. These other people had access. True. Why does — I mean, part of his defense was that other people, somebody else must have put the drugs there. Well, it's one thing to argue, Your Honor, that these other people could have, but he was entitled to actually have the assistance of that at trial and to bring in those people and to subpoena those people and to have that presented to the jury. Yes, his defense attorneys can make those arguments, but if he is able to subpoena those people in and to show to the jury that, yes, these people gave information because they're working up charges. Yes, these people have their own charges. Yes, these people did something to help themselves out. That's different. That's stronger. Except for the fact that the CI said, I don't know where the storage unit is. We don't know that that's what she said, Your Honor. What Detective Plake said was, well, what we know from the record is, the CI gave him information about the storage facility. He went to that storage facility. No, but they canvassed the storage facilities throughout the area, right? No, Your Honor. Detective Plake, out of 120 storage facilities in the area, went to one and said, at that one, if it's not here, give me the storage facility that's related to this one. So whoever that CI was sent Detective Plake to that one and gave him enough information to know that whatever storage facility it was, it was related. That's not hit and miss, as the government has argued. That's not, you know, doing investigation and canvassing. The CI, and Detective Plake also said at trial, the CI knew what was in that storage facility. This isn't hit and miss. The CI knew, and Detective Plake assumed that the CI had been in that facility. But this is all information that we shouldn't have been learning at trial. The harm that would have been caused by giving Mr. Kimmel this information through an in-camera hearing was zero. This was not things that we should have known. But that's not really the test. Well, actually, Your Honor, when Mr. Kimmel presents information that it was relevant to at least one defense, this Court said there is practically no harm in going through the in-camera process. Right. And I don't disagree with you on that. I'm just wondering whether it just didn't seem to affect the defense as I read this case, that his defense was going to be the same regardless of whether or not the CI was identified and presuming that the CI was one of these two people. The test, though, Your Honor, is not whether it would have affected the defense. The test is, is it relevant to a defense? And we've demonstrated both at the pretrial stage and now on appeal that it would have been relevant. If the Court doesn't find that it would have been meritorious, that's a different question. Is it relevant? It's not whether would it have been successful, not the question. But relevant, I'm with you. But I'm just asking if let's assume, because best-case scenario for you, it's either Amanda or Kelly, right? Correct. That's the most helpful. Because if it's somebody else, then it really is totally irrelevant. Correct. So let's assume it's one of those two. Or someone that had access to it, like Kelly. Okay. But those are the only people we know of, according to your own client, who had access. Correct. So he puts that evidence before the jury. The jury is fully aware that it could have been one of these two women because they had access, and one of them, I think, even had to code. So how does it strengthen the inference that it was, in fact, one of those two, that the drug belongs to one of those two women, if they are the ones who tipped the police off? Just what's the chain of inferences that helps the jury get to that conclusion? The chain of inferences is Mr. Kimmel testified that I'm a drug user, I use this amount of meth, this is what I do. McNevin comes in and says, I did tip off the police. Now defense counsel can say, look, you heard my client. He admitted to this. This is what his story is. Now you hear McNevin say this. Are you going to believe someone that is working off charges who has this problem, who did these things? We put her in front of you. She has a motive. She has received benefits. She's the one that only talked to the police when she was in jail. She only talked to the police when she had something to gain. You — But she's an impeachment, except that then she has her direct testimony that she saw that the stuff is there. And he put it there. That's fine. But when you have an actual defense as a defendant, frankly, that's rare. It's really rare, Your Honor. When you have — when you can pull in someone as a defendant to have an actual case-in-chief that you can pull in and you can say, not only did my client testify, but now we know who did it. We can say we have an actual person who came in and had benefits received. And we can name that person. And we have this surveillance time of — or this four-day period of time where no one watched that storage facility, even though the police knew it and were suspicious of it, and no one watched it. And the access records show that somebody using your client's code did, in fact, enter between those dates? Correct. And no one watched it. That would only be Kelly, right? She was the only one who had the access code? She wasn't the only one. Who else? Amanda had the access code? Amanda did as well. And, you know, peripheral people, the parents and the manager and whatnot. But this is — and the thing is, every case is different. So the district court should have looked at this, not like other cases, should have looked at very specifically at this case. Can I talk — Please go ahead. Talk briefly about the Franks issue. Everything is very laid out in the briefs. But what I think the district court's primary error was, when you're assessing the misrepresentations and omissions, it's not just enough to say, let's throw all this out and just focus on — Why not? Because that alone gives rise to probable cause. It doesn't matter who owns the unit at that point. It just gives rise — well, I know you got the medical marijuana thing, but putting that aside. Okay. But the thing is, you can't do that when there's a Franks issue, because it also required the district court to put in all the material omissions. But it doesn't matter who owns — I mean, that's what I'm saying. Everything that relates to misrepresentations, let's say, about things that affect your client, who cares? It doesn't matter if — because maybe the thing is in his name, but all they're concerned about once the dog alerts is that we have probable cause to think that there's contraband in there. Sure. We need to go in there and check it out, right? So what difference does it make whether your client's door was kicked in, whether he lived — you know what I'm saying? Sure. But Franks requires that, and I'll posit this to you, Your Honor. If I say, Your Honor, I want this search warrant, I have a dog sniff, oh, by the way, I have — in addition to this dog sniff, I'm now going to tell you that I lied about these ten other things. So are you going to believe me, Your Honor, about this dog sniff at the same time that I'm also now coming clean about these ten other things? That's the problem. That's what Franks required the court to do. It required the district court to say not only, okay, I'm going to consider this dog sniff, but Franks required the court to also put in those material omissions and let — and look at it through the view of a magistrate who's now being told, I'm looking at this through a view of an officer who's also told me false things, and here's the false things. And I don't think that the district court appreciated that that's what Franks required it to do as well. Okay. But so you're saying that when you add in the various misstatements, misrepresentations, whatever you want to characterize them as, when you add all of those in, they so call into question the deputy's or the officer's credibility that the judge was entitled to question whether the dog sniff really occurred, the dog alert ever occurred? Correct. Correct. And to that, I would add that the 80 percent that the dog tested at accurately, that's in the search warrant affidavit, so if you're testing for 80 percent accuracy and — That's pretty good. And one of the drugs is marijuana, so now we're down to like 65 percent, Judge. Just throwing it out there for the math. Well, just tell me the worst of the misrepresentations, because my impression was even when you added all those in, they weren't of such a character to call into question that the deputy must have made up the dog sniff altogether. So what was the worst misrepresentation? The worst of the misrepresentations is he said that he said Kimmel was going in and out as recently as yesterday. There was none of that. He — all his information had to do with the storage facility gate, which is totally separate and apart from the unit itself. That was a bold-faced misrepresentation. That's egregious. Can I briefly address the — Go ahead. Okay. Rule 24 is very specific when district courts replace alternate jurors. Our contention is the district court in this case was not prudent in its desire to rush through the seating of the alternate jurors. It was also not prudent in its instructions or lack of instructions under Rule 24 and rushing through the instruction that it gave to the jurors. Can you remind me, is there somewhere in the record where the judge was alerted to how much longer it would take alternate number one to get there? There is nothing in the record about that. Okay. Because I remember the judge saying, yes, we've contacted both. The one is here, and we have no idea when the other one is going to get here. Correct. And the — So if that's the state of the record, it seems to me you just have a really uphill battle, because we have cases, I think, in a different context that said even a 10-minute — you know, even if the juror is sort of 10 minutes late, it's the judge within the judge's discretion to say, you know, I have 11 other people waiting here. We're not going to wait. And here, if the judge had no — I mean, I get it if it's like she's literally at the, you know, the front door, and she's about to be here, and the judge says, forget it, we've waited an hour, juror number two, get in there. But here, if we don't know how much longer, why was it unreasonable for the judge to say, look, I'm not going to wait indefinitely. I've waited an hour. I have the juror ready to go, and I'm not going to make these people wait any longer. Sure. And the problem is, it's not even clear in the record how long the judge had waited before they even called, because they had only checked in with the sick juror within 35, 45 minutes within that hour. So it's unclear when they even called the juror. But the court didn't even wait the 10 to 15 minutes that he said he was going to wait for the juror. Counsel, what was the harm to the defendant by the court not waiting? I think the harm is, number one, when defense counsel go through their rationale and a reason in mind, and they do so with an understanding that there's a justification for doing that. But the ultimate harm is the compounding of whatever rationale the trial counsel had in using their peremptories the way that they did in choosing the jurors by refusing, not refusing, excuse me, by not giving the instruction to make sure under Rule 24 that the juror did not have any other conversations with anyone else during that weekend-long interim by the two or three. But is there any evidence in the record that the outcome, the possible outcome of the trial was affected in any way? Is there any concrete harm that you can articulate? There's not. And that's why I think even under, if it's not deemed a structural error, that's why the government can't meet the harmlessness test. You can't guarantee an impartial jury if the instructions that Rule 24 or the assurances that Rule 24 requires, the government can't show that. Thank you, Counsel. Thank you. I'll give you some time for rebuttal. Thank you so much. May it please the Court, Bill Reed for the United States. The District Court acted within its discretion in this case when it refused to order disclosure of a confidential source who provided a tip to law enforcement in this case. Mr. Kimmel failed to allege anything in his motion for disclosure before the District Court to show that the disclosure of this confidential source was essential to a fair determination of his cause, and consequently he failed to meet his burden to show that disclosure of this confidential source would have been relevant or helpful to his defense. Mr. Kimmel failed to show that the confidential source or disclosure of this confidential source would have been relevant to even one defense, which is the bare minimum that was necessary to have triggered an in-camera review by the District Court. The only thing that Mr. Kimmel alleged in his motion before the District Court with disclosure of this confidential source to any specific or identifiable defense. Rather, he made a blanket request for disclosure of the CI so that he could learn, and I'm paraphrasing from the motion, so that he could learn how the CI came to obtain this information and to learn what role the CI played with respect to this case. That was insufficient, and the Court certainly acted within its discretion at the time the motion was made to refuse to either conduct a hearing, an in-camera review, that is, or, for that matter, disclose on that bare minimum. There is no absolute right, as this Court knows, to disclosure of a confidential source. It has to be relevant to a defense. That showing was not made in this case by Mr. Kimmel before the District Court. Well, the relevance, they argue, is that the confidential informant may have had access to the unit and thereby increased the amount of drugs that were there. Why isn't that relevant? First, Your Honor, that was not part of the argument made before the District Court. That's sort of been an evolving argument that, in hindsight, has been posited before this Court and after conviction. Again, though, had that even been made, I would submit that there was nothing other than just Mr. Kimmel's speculation. I don't understand. I'm just saying if that's the relevance that's argued here, so why wouldn't that be relevant? Because it would be relevant if it was more than speculation, and the test requires more than speculation. It inspires the defendant was able to allege that his roommate, an identifiable individual, had planted drugs in his room. That certainly was much more of a tangible allegation than it wasn't even an allegation in this case, just Mr. Kimmel, he needs this in order to know how the C.I. had this information and what role the C.I. played. He had no idea. Was his defense at trial when he took the stand, right? He did take the stand. Was his defense that, well, some of this is mine, but any amount over whatever the threshold is for the mandatory minimum was this other person's? I thought his defense was none of it's mine. It was this other person's entirely. I think that's correct, Your Honor. I think he denied responsibility for anything. He did admit being a methamphetamine user of abundant quantities. I think he claimed to have used an ounce of methamphetamine a day, which is a great deal, as this court knows. But I believe he disavowed any knowledge or possession of any of the contraband found either in the bedroom that he was tied to just really unequivocally or unambiguously, and to the storage shed that he was even just as equally tied to. He did not disavow any type of abundance. Right. So leave aside the quantity issue. Why wouldn't it be relevant to show access that the confidential informant is basically committing the crime or a crime storing? I mean, that's what they're driving at is that they wanted to show that somebody else had access and somebody else was trying to lay the blame on Kimmel. Well, again, there's no evidence to show that the spy. No, I understand that. I'm just saying, wouldn't that be relevant? If he were able to make such a showing, it would be relevant. But here, as distinguished from Spires, there's no evidence that such as a roommate would have access. There's no evidence that this confidential source had access, had ever been there. It just provided this he or she just provided the information is vague, unspecific. The detective conducted his own investigation to even learn where this storage unit was. There's no evidence that this informant or confidential source had any idea of where it was. And this was basically shoe leather work to find out where it was. So there's no evidence that that. And he was able to make such an allegation as the court pointed out before in his own testimony. Really, it would have lent nothing in addition to it. And, again, the test is did the district court abuse its discretion based upon the evidence and the allegations that were placed in front of it at the time the motion was made as to what this confidential source may or may not have known or may or may not have done in relation to providing a very general tip to law enforcement. Under what Mr. Kimmel proposes in this case, the exception that he proposes essentially would swallow the general rule that they're not entitled, a defendant's not entitled unless he or she can show that the confidential source is relevant to a specific defense. Again, this is an abuse of discretion standard, not to submit that the court did not abuse its discretion in either denying the in-camera review, to conduct an in-camera review, or to release the information about this confidential source. With respect to unless there are any other questions about the confidential source, I'll move to the Franks hearing the motion to suppress. The district court correctly denied the motion to suppress in this case. Again, the standard, as Judge Watford, I think, basically laid out just a few minutes ago, is whether or not, irrespective of whatever information is challenged in search warrant affidavit, setting it aside, if what remains is still sufficient to support probable cause, then no Franks hearing is necessary. Here in this case, there's really nothing. It's really pretty irrefutable, I would submit, that the dog sniff alone, and there was other evidence in addition to that, but the dog sniff alone sufficiently provided probable cause to support the search warrant, the granting of the search warrant, without the necessity of delving into what tidbits of information the confidential source had supplied to Detective Plyk and filled out the bare bones affidavit in addition to the dog sniff. So, here the district court correctly found that probable cause was even in the aftermath, and it's not even clear that the information, it really was not, there was never really any test of the other information, whether or not it was unreliable or inaccurate or an omission, but irrespective of that, the dog sniff sufficiently established probable cause, the district court was correct in not conducting or not granting the Franks hearing. And so what do you make of the medical marijuana issue then? Your Honor, I think in the brief I've argued that even if the medical marijuana was something that… Well, let's say it was perfume, that the dog was also trained to alert to perfume. Would that make a difference in this case? Hypothetically, perhaps, but again, the standard is whether or not, only whether or not there's a fair probability of probable cause. It's, I guess, debatable whether or not something that's not a controlled substance would still supply probable cause, a fair probability that there's probable cause, but here there's no evidence that this dog was trained to… I'm just using perfume hypothetically, but, I mean, that's part of their argument, is that the dog was oversensitive or could alert to items that were not subject to, not illegal under state law, and this was a state search. Again, one, I think the argument, sort of a mathematical argument I made, an 80% chance, I think, if my math is correct, is certainly a fair probability, even if medical marijuana were, even if it could be pointed some way that medical marijuana is what this dog was alerting to. It's not an absolute right to possess marijuana in a storage shed. It certainly might rise to the level of some sort of affirmative defense or maybe an absolute defense, but an individual probably would have to establish that they're keeping their medical marijuana in a storage shed that's being visited multiple times a day. Under this evidence, there certainly, I would argue, would be probable cause that this is not medical marijuana being used, marijuana being used for legitimate purposes under Nevada state law. It might be an affirmative defense after probable cause has been established and the unit's been searched and whatnot, but, again, it's just a fair probability. It's all that drives it. May I ask on a different subject, what's the best evidence in the record that Kimmel knew that the guns were stolen? Your Honor, the best evidence I would submit is that there were two stolen guns. I believe the testimony were that they were valuable or high-end, and they were in two separate locations. I would submit that there's a pretty strong inference that two stolen guns, high-end guns kept at two separate locations provides a certainly. That's completely circumstantial? Yes, Your Honor. There's no direct evidence that he knew they were stolen? There is no direct evidence that he knew, but I think the test is knew or had reasonable cause to know. I believe that's in the statute, and I submit that having these two weapons at two different locations and they're both high-end certainly any reasonable juror could have found. What's the inference you're drawing from the fact that they are high-end, that someone as broke as this defendant supposedly was couldn't afford to acquire them other than some kind of an illicit transaction? Is that the idea? I think that the value — Because, I mean, let's just say that they are high-end, but I don't know. I got it on eBay at a real nice price. I mean, I guess I'm — what I thought you had to show in order to prove knowledge in this possession of stolen property context was either that that person stole the stuff themselves or you put on evidence about the circumstances under which they acquired the property such that any fool would have had to know that this is not a legitimate transaction. And here, as I understand it, you put on — or not you, but the government put on nothing to show that he stole them, put on nothing to suggest in any way that the circumstances under which he first came into possession of them suggested that they were stolen. So I didn't see where the case was on these two counts. I think the best argument is that it had reasonable cause to know. And having two weapons, one in a locked storage shed with other contraband, other illegal contraband, and this bedroom where there's a safe and pay-and-owe sheets and other illegal drug contraband in two separate locations, I do think that the value does — it doesn't pave the way entirely, but, again, it's another factor to show the reasonable cause. Reasonable cause that he should have known that they were stolen. It's not — no, there's not a — as I read the statute, there's no proof of an absolute certainty but reasonable cause. That's the best argument I could make, Your Honor, as to that. So as to count three, which is the mushroom count distribution, what — correct me if I'm wrong, but if I understand the evidence correctly, the government expert said that the amount was consistent with personal use and it had not been cut down or found in bags for distribution. So what was the evidence that he was intending to sell it? There was a scale, I believe, and this is in the bedroom, Your Honor, as I recall. There was a scale, there were pay-and-owe sheets, and there were plastic bags. I see my time is up. If I could just finish responding. Plastic bags used to package and distribute controlled substances. Again, it's not a — there's no — it's not a copious amount of drugs, but certainly with all this constellation. I'm just sort of curious if the jury would acquit on the distribution count for marijuana but not for the mushrooms. As Your Honor knows, juries do — I hate to say funny things, they do, but it certainly wasn't irrational given the constellation of evidence in the bedroom. May I ask a question? Sure, absolutely. What's your response to opposing counsel's view that the error in failing to ensure that the alternate juror had not discussed the case with anyone was not harmless? First, it's before this Court under plain error review, so I think the defendant has to show that there was prejudice by that, but I think that the district court in — I think there's sufficient evidence that this Court could find that the district court preserved the integrity of this. The district court did not ensure that the alternate juror had refrained from discussing the case. You agree with that, correct? It did not use those specific words. I agree, Your Honor. What words did it use that conveyed that idea to the alternate juror? I believe his words were you remained under the same oath that I provided at the outset of the trial, which included the admonition you're not to discuss the case with anyone, watch any media attention to it or anything like that. So jurors are presumed to follow the Court's instruction. I would submit that that's sufficient in this case under plain error review to satisfy that the integrity of the communication admonition was followed by this juror. Thank you. Further questions? Thank you, counsel. We'll give you two minutes for rebuttal. Thank you. I'd like to correct the point about what Mr. Kimmel did communicate below about possible defenses. At excerpts of Record 1603, defense counsel in his motion to produce the confidential informant specifically said that the confidential informant would be relevant to defenses of entrapment, imperfect entrapment, and sentencing entrapment. So I disagree with government counsel's indications to the contrary. To address Judge Thomas' question about the count three mushroom conviction, I do think that given what the jurors had to go through with regard to the marijuana verdict and the hoops that they had to jump through for the lesser included, that there is a chance, and we raise this with regard to the jury verdict generally in getting the special verdict, that perhaps there is an indication that the jurors did not think that they wanted to go through that again to get the lesser included for the special verdict for the mushrooms. And that's why in one of the issues, I believe it's our last issue, we stated that we think that there's an error with regard to the process by which the district court went through for the lesser included offenses. And we understand that defense counsel at the trial below objected to any provision of the lesser included. But it's our position that even though we objected to it, that doesn't give the district court a right to do whatever it wants in providing special verdict forms. And if you're going to do it over defense counsel's objection, you still have to do it correctly. It's not a free-for-all. Finally, to answer- But it would be an invited error, wouldn't it, essentially? Essentially. To answer Judge Rawlinson's question, at the outset of the trial, what the district court advised the jurors, and this is the only time that the specifics were given with regard to the communication, the district court advised, I will tell you, please don't communicate with anybody else, your spouse, significant other, anybody else, how you think I ought to look at this case or whatever. That was essentially the instruction. At the end of each day after trial, there was no other specific instructions given with regard to communications. Nothing else was given. That was the only instruction. So when the district court stated, remember your oath, that was the only other instruction that the district court was referring to. It's our position that Mr. Kimmel is entitled to a new trial, and we would ask that this court advise that the district court at the very least ask that an in-camera proceeding occur with the defense counsel being able to participate in that in-camera proceeding so that the confidential informant can be discussed. Thank you very much. Thank you, counsel. Thank both of you for your arguments. The case just argued will be submitted for decision, and we'll proceed to the last case on the oral argument calendar for this morning, which is Pratt v. Gower.
judges: Thomas, Rawlinson, Watford